STATE of Missouri, Respondent,

v.

Roscoe James PITTMAN, Appellant.

No. 39489.

Missouri Court of Appeals,
St. Louis District,
Division Four.

June 6, 1978.

Motion for Rehearing and/or Transfer
Denied July 14, 1978.

Application to Transfer Denied
Sept. 12, 1978.

Oliver, Oliver & Jones, P. C., J. Fred Waltz, Cape Girardeau, for appellant.

John D. Ashcroft, Atty. Gen., J. Michael Davis, Paul Robert Otto, Asst. Attys. Gen., Jefferson City, William L. Syler, Jr., Special Pros. Atty., Cape Girardeau County, Cape Girardeau, for respondent.

ALDEN A. STOCKARD, Special Judge.

Charged by information in two counts, Roscoe James Pittman was found guilty by a jury of robbery, first degree, and of assault with intent to kill without malice, and he has appealed from the ensuing judgment. We affirm.

A jury reasonably could find from the evidence that on October 21 1976, appellant entered the ladies' rest room at a rest area on Interstate 55 in Cape Girardeau County and knocked Mrs. Mabel Stewart to the floor, choked her and hit her in the face with his fist. He then grabbed some car keys from Mrs. Stewart's hand and a watch from her wrist, and attempted without suc-

cess to remove a ring from her finger. After making a sexually-related assault on her person he told her to remain in the rest room and that if she tried to leave he would kill her then instead of later. However, she did leave the building and told Mr. Gary S. Lively, a truck driver who had stopped at the rest area, that appellant and his companion had her car keys. After some discussion the keys were handed over to Mr. Lively. The watch was not recovered. Mr. Lively followed appellant to his automobile and obtained the license number and, in the meantime, Mrs. Stewart obtained a pistol from her automobile and gave it to Mr. Phillip Brough, another truck driver who had entered the rest area. Mr. Brough walked toward appellant and his companion with the pistol held at his side. His purpose was to prevent appellant from leaving the rest area until Mr. Lively could block the exit with his truck. When Mr. Brough was 20 to 40 yards away, appellant leveled a rifle at him and started shooting. Mr. Brough heard a bullet hit a picnic table which he had jumped behind and he started shooting back. Appellant and his companion then left the rest area by driving over a grass area to get around Mr. Lively's truck.

Following appellant's arrest a short distance away, he gave a written statement in which he related that while his companion was "fixing" their automobile he went to the ladies' rest room where he saw a white woman lying on the floor. There were some car keys nearby and he "picked the keys up and helped the lady up off the floor, then⁰[he] walked out the door."

Appellant's first point is that the trial court erred in failing "to instruct the jury on the lesser offense of stealing from the person." His theory is that if the story he related in his written statement, which was introduced in evidence by the State, is believed, the jury could have found him guilty only of stealing the car keys.

■ In his motion for new trial appellant assigned as error the failure of the court to instruct on robbery, second degree, but the error now asserted was not presented in the motion for new trial. The point

presents nothing for appellate review. *State v. Flynn,* 541 S.W.2d 344 (Mo.App. 1976); *State v. Rennert,* 514 S.W.2d 579 (Mo.1974). Assuming appellant was entitled to such an instruction, which we seriously doubt, when we consider the total circumstances of this case, as authorized in *State v. Patterson,* 443 S.W.2d 104 (Mo. banc 1969), we conclude that the failure to so instruct did not result in "manifest injustice or miscarriage of justice." Rule 27.-20(c). See particularly *State v. Kurtz,* 564 S.W.2d 856 (Mo. banc 1978).

■ Prior to trial appellant filed a motion to sever the two counts. In his second point he contends that the refusal to do so constituted prejudicial error. He relies primarily on the concurring opinion of Judge Donnelly in *State v. Neal,* 514 S.W.2d 544 (Mo. banc 1974), in which he concluded that Rule 24.04, as amended, permitting joinder of offenses in a single indictment or information in limited circumstances, left unaltered the rule stated in *State v. Terry,* 325 S.W.2d 1, 5 (Mo.1959), "that a defendant may not be convicted at the same trial of two distinct felonies." However, in the later case of *State v. Baker,* 524 S.W.2d 122 (Mo. banc 1975), the court upheld the constitutionality of amended Rule 24.04, and held that trial of separate offenses in a single trial is permissible where the factual situation falls within the prescribed limits of Rule 24.04. See also *State v. Duren,* 556 S.W.2d 11 (Mo. banc 1977). Therefore, the determinative issue is whether the factual circumstances of this case are such that Rule 24.04 authorized the conviction of appellant of the separate offenses of robbery, first degree, and assault with intent to kill without malice.

Rule 24.04 authorizes the joinder of charges of offenses in an information in separate counts when the offenses are "based on the same act or on two or more acts which are part of the same transaction or on two or more acts or transactions which constitute parts of a common scheme or plan." *State v. Baker,* supra; *State v. Toney,* 537 S.W.2d 586 (Mo.App.1976). Appellant contends the two offenses are "fac-

tually unrelated" because the robbery took place in the rest room of the rest area while the assault occurred in the parking area; the assault did not involve Mrs. Stewart or Mr. Lively but only Mr. Brough; and Mrs. Stewart and Mr. Lively knew nothing of the shooting incident and Mr. Brough knew nothing of the robbery. We consider these to be only evidentiary differences.

Rule 24.04 is patterned after Rule 8(a) of the Federal Rules of Criminal Procedure, *State v. Johnson*, 508 S.W.2d 18, 20 (Mo. App.1974), which is designed to encourage joinder of offenses in the interest of more efficient administration of criminal justice. *State v. Brannom*, 539 S.W.2d 747 (Mo.App. 1976). The rule should not be so narrowly construed as to defeat its purpose. The robbery and the assault were "two * * * acts or transactions which constitute[d] parts of a common scheme or plan." That scheme or plan was to commit robbery and escape, and the acts constituting the two offenses were committed in the furtherance of that plan. Both offenses occurred at the rest area within a few moments of each other with no complete break in the related activities. We conclude that under the factual circumstances the joinder was authorized by Rule 24.04.

Appellant next asserts that the court erred in failing to quash the jury panel because "the selection procedure used resulted in a systematic exclusion of racial and ethnic minorities."

The transcript shows that the prospective jurors were selected by taking every sixth name from the voter registration lists. From that group 400 names were drawn, and from that group 75 names were drawn to comprise the jury panel. The court stated that the "group is selected strictly without regard to race, without regard to occupation or anything else other than the fact that they are registered to vote in Cape Girardeau County." Appellant does not contend that the panel was otherwise selected. He asserts that he was "constitutionally entitled to a jury which has been selected from a cross section of the eligible persons in the community at large," there

were no blacks on the jury panel; and that "the exclusive use of voter registration lists prevents the panel from being representative of the county."

■ Appellant was not absolutely entitled to have negroes on the jury that tried him, or even on the panel from which that jury was drawn. *State v. Crockett*, 543 S.W.2d 314 (Mo.App.1976). It is only when a defendant is by *design* deprived of the chance of having negroes on the jury that constitutional principles apply. *State v. Logan*, 341 Mo. 1164, 111 S.W.2d 110 (1937).

It has been held in numerous cases that the use of voter registration lists as the sole source of obtaining names of prospective jurors is not of itself constitutionally impermissible "unless this system results in the systematic exclusion of a 'cognizable group or class of qualified citizens.'" *Camp v. United States*, 413 F.2d 419 (5th Cir. 1969). See also *State v. Parker*, 462 S.W.2d 737 (Mo.1971). As stated in the *Camp* case at p. 421, "those who do not choose to register to vote cannot be considered a 'cognizable group.'" See *Grimes v. United States*, 391 F.2d 709 (5th Cir. 1968); *Gorin v. United States*, 313 F.2d 641 (1st Cir. 1963); *Chance v. United States*, 322 F.2d 201 (5th Cir. 1963). In *Simmons v. United States*, 406 F.2d 456, 463 (5th Cir. 1969), in commenting on the use of voter registration lists for jury selection, it was said that " 'the best thought of all three branches of government points toward voter registration lists as representing "the best cross-section of the community; indeed, they are probably the most broadly based lists available," ' " and in *People v. Powell*, 40 Cal.App.3d 107, 115 Cal.Rptr. 109 (1974), the use of voter registration lists was said to be an "unassailable" method of making the initial selection of residents to serve as jurors.

■ The burden of showing systematic exclusion was on appellant, and the burden of going forward with evidence to the contrary was not on the State until appellant presented a prima facie case of illegal exclusion. *State v. Mooring*, 445 S.W.2d 303 (Mo.1969); *State v. Crockett*, supra. The mere showing that on a particular panel

there were no negroes does not establish a prima facie case because, as stated in *State v. Logan*, supra, 111 S.W.2d at pp. 114–115, "It may happen that no negroes (or members of any other particular class of our citizens) will be on the regular panel for a given term of court, or on the special venire for a particular case. If that occurs in due course and good faith because of the ratio of white to negro population, or because of actual disqualifications, pure chance or the like, it is within the law; * * *." Appellant made no prima facie showing of any systematic exclusion of a cognizable group or class of citizens qualified for jury duty.

■ Appellant's final point is that the court erred in refusing his oral motion for acquittal because "the state's evidence failed to show beyond a reasonable doubt that [he] was guilty of robbery in the first degree * * * as a matter of law." We note that there is no mention in this point of the charge of assault with intent to kill. Our previous recitation of what a jury reasonably could find from the evidence clearly establishes that a submissible case was made as to both offenses. In argument under this point appellant states that it is his position that because the car keys "were returned without objection outside the restroom" the State "failed to established a taking of property with intent to permanently deprive Mrs. Stewart of the use of the items mentioned in evidence." In *State v. Kennebrew*, 380 S.W.2d 293 (Mo.1964), it was held that an intent to permanently deprive the owner of his property is not an essential element of robbery in the first degree.

The judgment is affirmed.

DOWD, P. J., and SNYDER, J., concur.