STATE of Missouri, Respondent,

v.

Jerry McCRARY, Appellant.

No. 62236.

Supreme Court of Missouri,
En Banc.

Sept. 8, 1981.

Rehearing Denied Oct. 13, 1981.

Michael D. Stokes, Frances M. Luehrman, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Nancy Kelley Baker, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant was tried on a four count indictment and convicted by a jury on all four counts. Count I charged appellant with assault with intent to kill with malice aforethought, § 559.180, RSMo 1969, and concerned a shooting that occurred on November 13, 1978. The jury assessed the punishment on this count at life imprisonment. Counts II and III concern the firebombing of a house on March 8, 1979. Count II charged appellant with arson in the first degree, § 569.040.1, RSMo 1978, and the jury assessed the punishment on this count at a term of fifteen years imprisonment. Count III charged appellant with assault in the first degree, § 565.050.1(3), RSMo 1978, and the jury assessed the punishment on this count at a term of thirty years imprisonment. Count IV charged appellant with carrying a concealed weapon, § 571.115, RSMo 1978, on March 12, 1979, and the jury assessed the punishment on this count at a term of five years imprisonment. Count IV charged that appellant is a persistent offender under § 558.016, RSMo 1978. The trial court found appellant to be a persistent offender. The trial court did not increase the punishment assessed by the jury but imposed sentences in accordance with the jury's verdicts. This Court has jurisdiction over this case, because a sentence of life was imposed. Mo.Const. Art. V, § 3.

Appellant contends that the trial court erred: (I) in not dismissing either Count II or III, because the charging of both counts placed appellant twice in jeopardy for the same offense; (II) in not granting appellant's motion to sever, because there was an improper joinder of offenses; and (III) in admitting evidence obtained through an unconstitutional search and seizure. We affirm appellant's convictions.

Appellant lived with Lydia Penermon without the benefit of marriage for a number of years, having two children by her. Their relationship was somewhat turbulent, and, in May of 1978, Lydia left appellant. Shortly thereafter, Lydia started to live with Rufus Penermon, whom she married on July 16, 1978.

Early Monday morning, November 13, 1978, Rufus, Lydia, and the children were leaving their home, located at 4241 East Evans, St. Louis, Missouri. As Lydia and the children were getting into a car, Rufus walked out into the backyard to unlock a gate. As Rufus returned to the car, three gunshots were fired. One shot struck Rufus in the back, and he was subsequently hospitalized. Neither Rufus nor Lydia could identify the man who fired the shots. The police recovered two spent bullets near one of the parked cars in the backyard. The next day, Lydia received a telephone call from appellant in which he said, "I wanted to see the kids. Next time I'm going to kill him." About a month prior to the shooting, appellant had telephoned Rufus and said, "If you don't stay away from my woman, . . . I'm going to kill you." Both Rufus and Lydia testified that appellant made numerous threats against them.

Appellant had told Lydia that, "If I can't see the kids I'm going to burn the house down." On March 8, 1979, while Rufus Penermon was recuperating, appellant telephoned Lydia and told her, "If you don't come back to me . . . I'm going to do something bad tonight." At about 9:40 that evening, Rufus, Lydia, and the children were in their respective bedrooms on the second floor of 4241 East Evans. John Penermon, Rufus' father, was on the first floor of the house, where he permanently resided. John testified that as he was walking through his bedroom he looked out the window just as appellant threw a firebomb which landed in his bedroom. The firebomb burst into flames burning John's face and hands, and he was hospitalized for these injuries.

On March 12, 1979, Officer Richard Arthur responded to an anonymous call to investigate a suspicious person described as, "A [N]egro male wearing a black hat, black coat, black trousers and, . . . a black shirt and holding a long or large cardboard box."

Officer Arthur arrived in the vicinity of 4226 East Evans and saw a black man who was dressed in black and carrying a long cardboard box. This man was later identified as appellant.

Upon seeing Officer Arthur, appellant dropped the cardboard box on the ground near the street and walked away. Officer Arthur testified that he stopped appellant and determined that he was not carrying a weapon. At this time, Officer Clyde Bailey arrived and watched appellant as Officer Arthur went back to the place where appellant had dropped the cardboard box on the ground. One end of the box was open and the contents were clearly visible to anyone who picked the long narrow box up from the ground. Officer Arthur discovered a .22 rifle, live shells, and a homemade silencer inside the box. A firearms identification expert testified that bullets fired from the .22 rifle matched the two spent bullets recovered near the Penermons' car on November 13, 1978, indicating that the .22 rifle that was found in the box fired the bullets at the November 13, 1978, shooting.

Lydia Penermon testified that appellant often came by and did things like throwing something into the house or shooting into the house to harass them.

I

■ Appellant contends that the charging of Count II (arson in the first degree) and Count III (assault in the first degree) placed appellant twice in jeopardy for the same offense, because arson in the first degree is a lesser included offense within assault in the first degree under the facts of this case.

In *Sours v. State*, 593 S.W.2d 208 (Mo. banc 1980), *vacated and remanded sub nom. Missouri v. Sours*, 446 U.S. 962, 100 S.Ct. 2935, 64 L.Ed.2d 820 (1980), *incorporated by reference on remand, Sours v. State*, 603 S.W.2d 592, 603 (Mo.banc 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 953, 67 L.Ed.2d 118 (1981), we stated:

The test for determining whether two offenses are "the same" for double jeopardy purposes was stated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Gavieres v. United States*, 220 U.S. 338, 342, 31 S.Ct. 421 [422], 55 L.Ed. 489, and authorities cited.

593 S.W.2d at 213. *See also State v. Haggard*, 619 S.W.2d 44 (Mo.banc 1981).

The General Assembly has codified the *Blockburger* definition of lesser included offenses in § 556.046.1(1), RSMo 1978, and has provided in § 556.041, RSMo 1978, that a criminal defendant may not be convicted of more than one offense which arise out of the same conduct if the offenses are included within each other as defined in § 556.-046.1, RSMo 1978.

Applying the *Blockburger* test, we find that arson in the first degree requires, in part, that the defendant "[damage] a building or inhabitable structure, . . . ." § 569.-040.1, RSMo 1978. Assault in the first degree does not require any such element be established before that crime is committed. Assault in the first degree requires, in part, that the defendant "[cause] serious physical injury to another person." § 565.050.1(3), RSMo 1978. Arson in the first degree does not require any such element be established before that crime is committed. Each of these statutes requires proof of a fact that the other does not. The *Blockburger* test for lesser included offenses has not been met.

Section 556.041, RSMo 1978, provides that as a general rule, "When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense." None of the exceptions to this rule listed in § 556.041 are applicable to this case. Therefore, it is

not error to convict appellant under both Counts II and III.[1]

## II

Appellant contends there was an improper joinder of offenses under former Rule 24.04(b), *now*, Rule 23.05(b). The constitutionality of the Rule is not challenged.[2] Rather, appellant argues: (1) that there was a misjoinder of offenses, *i. e.*, including the counts appellant was charged with in the same indictment or information was not permissible under former Rule 24.04(b); and (2) that there was a prejudicial joinder of offenses, *i. e.*, even though joinder of offenses may be permitted under former Rule 24.04(b), it was the duty of the trial court to grant appellant's motion to sever

1. Appellant also argues that the offenses of assault in the first degree, § 565.050.1(3), and arson in the first degree, § 569.040.1, were committed as a single act of force, making conviction of both offenses violative of the double jeopardy guarantee. Appellant relies on *State v. Parsons*, 513 S.W.2d 430, 437–38 (Mo. 1974).

   In *Parsons*, the defendant was charged with "first degree murder by bombing" and bombing, §§ 564.560–.570, RSMo 1969. This Court held that conviction of both first degree murder and bombing violated the double jeopardy guarantee. Most of the supportive language for the holding was couched in terms of "a single act of force" or "a single transaction" test. In retrospect, we do not view the result of *Parsons* to be inconsistent with our holdings in *State v. Morgan*, 612 S.W.2d 1 (Mo.banc 1981); *State v. Olds*, 603 S.W.2d 501 (Mo.banc 1980); *State v. Sours*, 603 S.W.2d 592 (Mo. banc 1980), *cert. denied*, 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 118 (1981); or the *Blockburger* test as codified in § 556.046.1(1), RSMo 1978. The test is not "a single act of force" or "a single transaction" test.

2. Former Rule 24.04(b) (effective 1/1/79 to 12/31/79), *now*, Rule 23.05(b) (effective 1/1/80), *formerly*, Rule 24.04 (effective 7/1/71 to 12/31/78), has withstood attacks on its constitutionality. In *State v. Neal*, 514 S.W.2d 544, 549–50 (Mo.banc 1974), this Court upheld former Rule 24.04 against a claim that it in combination with a consecutive sentencing statute, § 546.480, RSMo 1969, chilled a defendant's right to a jury trial. In *State v. Baker*, 524 S.W.2d 122, 126 (Mo.banc 1975), this Court upheld former Rule 24.04 by holding that "[a] defendant does not have either a federal or state constitutional right to be tried on only one offense at a time." In *State v. Duren*, 556 S.W.2d 11, 19–20 (Mo.banc 1977), *rev'd on oth-*

the counts, because the joinder of offenses was unduly prejudicial to appellant.

Former Rule 24.04(b)[3] stated:

(b) With the exception stated in (a) hereof [subsection (a) dealt with the joinder of offenses when one or more of the offenses charged was capital murder[4]], all offenses which are based on the same act or on two or more acts which are part of the same transaction or on two or more acts or transactions which constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts, or in the same count where authorized by statute. Any indictment or information may contain counts for the different degrees

*er grounds sub nom. Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), this Court upheld former Rule 24.04 against a claim that the Rule reaches beyond this Court's rulemaking power under Mo.Const. Art. V, § 5, because it affects substantive rights.

3. Former Rule 24.04(b) (effective 1/1/79 to 12/31/79), *now*, Rule 23.05(b) (effective 1/1/80), is substantially the same as former Rule 24.04 (effective 7/1/71 to 12/31/78). For a comparison of the Rule before and after it was amended on July 1, 1971, see *State v. Baker*, 524 S.W.2d 122, 126 n.3 (Mo.banc 1975). *See also State v. Morgan*, 539 S.W.2d 660, 663–65 (Mo.App.1976).

   Former Rule 24.04(b) is similar to Fed.R. Crim.P. 8(a). *State v. Pittman*, 569 S.W.2d 277, 280 (Mo.App.1978); *State v. (Charles Deason) Johnson*, 505 S.W.2d 11, 12 (Mo.App. 1974); *State v. (Leroy) Johnson*, 508 S.W.2d 18, 20 (Mo.App.1974). *See State v. Baker*, 524 S.W.2d 122, 126 (Mo.banc 1975). However, Fed.R.Crim.P. 8(a) is broader than former Rule 24.04(b) in that the federal rule allows the joinder of offenses " 'of the same or similar character,' language *not* found in Rule 24.04 ...." *State v. Prier*, 561 S.W.2d 437, 439 n.3 (Mo. App.1978) (emphasis in original). *See State v. Howard*, 601 S.W.2d 308, 310 (Mo.App.1980).

4. On May 18, 1981, this Court ordered that the present Rule 23.05 be repealed effective 1/1/82, and a new Rule 23.05 be substituted therefor. This new Rule 23.05 abolishes the special provision for capital murder contained in the present Rule 23.05(a) and allows "All offenses ..." based on the same act, transaction, or common scheme or plan to be charged in the same accusatorial document.

of the same offense or for any one of such degrees.

It is apparent that former Rule 24.04(b) permitted, but did not require, the joinder of offenses, other than capital murder, in the same indictment or information when the offenses charged were based: (1) on the *same act*; (2) on the *same transaction*; or (3) on *a common scheme or plan*. The underlying theme of the Rule is the achievement of judicial economy through the joinder of related offenses.[5] *State v. Williams*, 554 S.W.2d 524, 528 (Mo.App.1977). *See State v. Brannom*, 539 S.W.2d 747, 750 (Mo. App.1976). A "common scheme or plan" by its very definition presupposes that it involves a series of separate transactions or acts. In the present case, three separate criminal acts were charged. First, Count I charged an act of assault by shooting that occurred on November 13, 1978. Second, Counts II and III charged a single act of "firebombing" that occurred on March 8, 1979. Third, Count IV charged the act of carrying a concealed weapon on March 12, 1978.

■ Our research has not revealed an opinion by this Court construing the meaning of the words "a common scheme or plan" as used in former Rule 24.04(b).

However, all districts of the court of appeals have considered the issue.[6] We find that the essential test in determining whether a common scheme or plan exists, in a case involving a single defendant acting alone, is the requirement that all the offenses charged must be *"products of a single or continuing motive."*[7] *State v. Jackson*, 566 S.W.2d 227, 228 (Mo.App.1978); *State v. Prier*, 561 S.W.2d 437, 440 (Mo.App. 1978) (emphasis added).

■ In this case, the state's evidence[8] showed that appellant's actions were the product of the single, continuing motive of revenge by harassment for the loss of his paramour and children. With regard to Counts I, II, and III, the state's evidence shows that appellant made numerous threats on the life of Rufus Penermon, and that appellant threatened to burn down the Penermons' house. The state's evidence concerning the Count IV charge showed testimony that appellant had a history of throwing things into and shooting into the Penermons' house, that appellant had in his possession the weapon used in the assault upon Rufus Penermon that occurred on November 13, 1979, and that he was arrested a short distance from the Penermon residence. There is ample evidence of the ex-

---

5. 2 American Bar Association, Standards for Criminal Justice 13–1.2 (2d ed. 1980) states: "Two or more offenses are related if they are based upon the same conduct, upon a single criminal episode, or upon a common plan."

6. *See, e. g., State v. Howard*, 601 S.W.2d 308 (Mo.App., E.D.1980); *State v. Buford*, 582 S.W.2d 298 (Mo.App., W.D.1979); *State v. Mack*, 576 S.W.2d 550 (Mo.App., E.D.1978); *State v. Pittman*, 569 S.W.2d 277 (Mo.App., E.D.1978); *State v. Jackson*, 566 S.W.2d 227 (Mo.App., E.D.1978); *State v. Prier*, 561 S.W.2d 437 (Mo.App., S.D.1978).

7. Two decisions of the court of appeals, *State v. Buford*, 582 S.W.2d 298, 302 (Mo.App.1979) and *State v. Prier*, 561 S.W.2d 437, 441–42 (Mo.App.1978), analogize the joinder of offenses rule to the common law evidentiary rule excluding the admission of evidence of *unrelated* crimes to establish a defendant's guilt of the crime charged. *See, e. g., State v. Reed*, 447 S.W.2d 533, 534 (Mo.1969); *State v. Reese*, 364 Mo. 1221, 1226–27, 274 S.W.2d 304, 307 (banc 1954). The evidentiary rule deals with what evidence is properly admissible to prove the

crime charged. The joinder of offenses rule deals with the more basic question of what crimes can be charged in a proceeding. The two rules deal with different questions, making the wholesale importation of the evidentiary rule into the law dealing with the joinder of offenses inappropriate. However, upon proper motion, see, *State v. Williams*, 603 S.W.2d 562, 567–68 (Mo.1980); *State v. Terry*, 325 S.W.2d 1, 4 (Mo.1959), the trial court is required to consider the prejudicial impact created by proof of *related* offenses in determining whether or not there is a prejudicial joinder of offenses. *See* at 272, *infra*. Whether the joinder of offenses is unduly prejudicial to a criminal defendant is a separate issue from the question of whether offenses have been properly joined under former Rule 24.04(b).

8. In deciding whether there was a misjoinder of offenses under former Rule 24.04(b), we examine only the state's evidence, because former Rule 24.04(b) dealt with the offenses that the grand jury or prosecutor (the state) may include in the same indictment or information.

istence of a plan of harassment and revenge aimed at the Penermon family. There was no misjoinder of offenses under former Rule 24.04(b).

■ Appellant's second argument is that, although the joinder of offenses was proper under former Rule 24.04(b), the trial court was under a duty to order severance, because the joinder of offenses · was unduly prejudicial to appellant. There is no Missouri Supreme Court Rule requiring the trial court to sever counts that are property joined under former Rule 24.04(b) because of the prejudice created by the joinder of offenses. *See also* Fed.R.Crim.P. 14. However, this Court "has evinced a willingness to consider the question of whether a trial court has abused its discretion in denying a request for separate *trials*, even though, *as a matter of pleading*, the offenses were *properly* joined in one information." *State v. Prier*, 561 S.W.2d 437, 439 n.4 (Mo.App. 1978) (emphasis in original).

In *State v. Duren*, 556 S.W.2d 11 (Mo. banc 1977), *rev'd on other grounds sub nom. Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), after concluding that the joinder of offenses was proper under former Rule 24.04, this Court stated:

Further, severance is a matter *within the sound discretion of the trial court* directed toward achieving a fair determination of the defendant's guilt or innocence of each offense charged. The court should consider, among other relevant factors, the number of offenses charged, the complexity of the evidence to be offered and whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. *The court remains under a continuing duty during trial to counter prejudice and order severance if necessary to achieve the fair result intended.*

556 S.W.2d at 20 (emphasis added). *See also State v. Williams*, 603 S.W.2d 562, 567 (Mo.1980).

Applying the *Duren* criteria, we find that the evidence in this case is not complex. The three criminal acts charged occurred at distinctly different times. The jury could intelligently distinguish the law and evidence applicable to each offense and were instructed to do so in Instruction No. 5 (MAI–CR2d 2.70), which stated in part, "Each offense and the evidence and law applicable to it should be considered separately." Appellant's argument here made is based upon speculation. *See State v. Easton*, 577 S.W.2d 953, 956–57 (Mo.App. 1979), *cert. denied*, 444 U.S. 863, 100 S.Ct. 131, 62 L.Ed.2d 85 (1979). The penalties imposed by the jury do not appear excessive under the circumstances. We find no abuse of discretion in the trial court's refusal to sever the offenses here charged.

### III

Appellant argues with respect to the Count IV charge that the .22 rifle, live shells, and homemade silencer seized on March 12, 1979, should have been suppressed, because these articles were obtained through an unreasonable search and seizure in violation of the fourth and fourteenth amendments to the federal constitution and Mo.Const. Art. I, § 15.

■ Prior to trial, appellant moved to suppress the admission of the .22 rifle and other evidence seized on March 12, 1979. A hearing was held on this motion, and the motion to suppress was overruled. Appellant did not object when this evidence was offered at trial, nor did appellant include this allegation of error in his motion for new trial. Appellant has failed to preserve this error for review. Rule 29.11(d); *State v. Yowell*, 513 S.W.2d 397, 402 (Mo.1974); *State v. Hall*, 534 S.W.2d 508, 510 (Mo.App. 1976). Our review is limited to plain errors that result in a manifest injustice or a miscarriage of justice. Rule 29.12(b); *State v. Bryson*, 506 S.W.2d 358, 361 (Mo.1974).

■ In *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978), the Court concluded that before one can complain of the violation of the fourth amendment, as incorporated into the fourteenth one has to have a "legitimate expectation of privacy" in the place or thing being searched. The Court created a two-

part test for determining whether a criminal defendant has a legitimate expectation of privacy in the thing or place searched. *See Rakas,* 439 U.S. at 143 n.12, 99 S.Ct. at 430 n.12; *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). First, the defendant must have an actual, subjective expectation of privacy in the place or thing searched. Second, the expectation of privacy must be "reasonable" or "legitimate."[9] The legitimacy or reasonableness of the expectation is measured "by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas,* 439 U.S. at 143 n.12, 99 S.Ct. at 430 n.12.

In *In re J.R.M.,* 487 S.W.2d 502, 508 (Mo. banc 1972), this Court held that the test for standing under Mo.Const. Art I, § 15, to be "whether defendant was entitled to and did have a reasonable expectation that the property would be free from governmental intrusion other than by a proper and lawful search and seizure." We now hold that the "reasonable expectation" test for standing under Mo.Const. Art. I, § 15, adopted by this Court in *In re J.R.M.* is identical to the "legitimate expectation of privacy" test adopted by the United States Supreme Court in the *Rakas* case.[10]

We conclude then, that in order for appellant's fourth and fourteenth amendment rights to have been violated or for appellant

to have standing to assert a violation of Mo.Const. Art. I, § 15, appellant must have had a legitimate expectation of privacy in the place or thing searched.[11] At the hearing on appellant's motion to suppress, appellant made no claim that he had either an actual, subjective expectation of privacy in the cardboard box that was searched or that his expectation of privacy was legitimate. "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas,* 439 U.S. at 131 n.1, 99 S.Ct. at 424 n.1. *See Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). Missouri follows this rule. *State v. Hornbeck,* 492 S.W.2d 802, 808 (Mo.1973).

In *State v. Achter,* 512 S.W.2d 894, 899 (Mo.App.1974), it was stated:

It is settled law that one has no standing to complain of the search or seizure of property which he has voluntarily discarded, left behind, or otherwise relinquished his interest so that he no longer retains a reasonable expectation of privacy with regard to it at the time of search or seizure.

*See also State v. Hall,* 534 S.W.2d 508, 510 (Mo.App.1976); *State v. Browner,* 514 S.W.2d 355, 356 (Mo.App.1974). We find no manifest injustice constituting plain error.

The judgment is affirmed.

---

**9.** The Court gave the following example: "A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as 'legitimate.'" *Rakas,* 439 U.S. at 143 n.12, 99 S.Ct. at 430 n.12.

**10.** In *Rakas,* 439 U.S. at 139, 99 S.Ct. at 428, the Court held that the federal doctrine of standing was "subsumed under substantive Fourth Amendment doctrine." This Court has refrained from incorporating the standing doctrine under Mo.Const. Art. I, § 15, into the substantive rights protected by that constitutional provision. *See State v. Johnson,* 598 S.W.2d 123, 127–28 (Mo.banc 1980), *cert. denied,* 449 U.S. 1067, 101 S.Ct. 795, 66 L.Ed.2d 611 (1980) (decided after *Rakas*). The interests that give rise to standing remain separate from the substantive rights protected by Mo.Const. Art. I, § 15.

**11.** Appellant was charged under Count IV with carrying a concealed weapon, § 571.115, RSMo 1978. Carrying a concealed weapon may be a possessory offense. In *Jones v. United States,* 362 U.S. 257, 263, 80 S.Ct. 725, 732, 4 L.Ed.2d 697 (1960), the Court created an "automatic standing" rule for possessory offenses. The automatic "standing" rule of *Jones* was abolished in *United States v. Salvucci,* 448 U.S. 83, 92, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980). The hearing on the motion to suppress in this case was held on February 25, 1980. The *Salvucci* case was handed down on June 25, 1980. Since we are reviewing this case under the plain error doctrine for errors that result in a manifest injustice or a miscarriage of justice, we need not decide whether the *Salvucci* case applies retrospectively or prospectively only. We apply the law as it presently exists.

MORGAN and HIGGINS, JJ., concur.

DONNELLY, C. J., concurs in result in separate opinion filed.

RENDLEN, J., concurs in result.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of BARDGETT, J.

DONNELLY, Chief Justice, concurring in result.

If I may be indulged the following observations:

(1) In *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), and *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), the United States Supreme Court articulated The Exclusionary Rule (which holds that evidence obtained by illegal search is not admissible at trial when timely objection is made).

(2) In *State v. Owens*, 302 Mo. 348, 259 S.W. 100 (banc 1924), The Exclusionary Rule was adopted in Missouri.

(3) In *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Court sought to make The Exclusionary Rule binding on the States.

(4) A rationale for The Exclusionary Rule has proved elusive. *See* Schlesinger and Wilson, Property, Privacy and Deterrence: The Exclusionary Rule in Search of a Rationale, 18 Duq.L.Rev. 225 (1980). To borrow from *Irvine v. California*, 347 U.S. 128, 136, 74 S.Ct. 381, 385, 98 L.Ed. 561 (1954):

> "Rejection of the evidence does nothing to punish the wrong-doing official, while it may, and likely will, release the wrong-doing defendant. It deprives society of its remedy against one lawbreaker because he has been pursued by another. It protects one against whom incriminating evidence is discovered, but does nothing to protect innocent persons who are the victims of illegal but fruitless searches."

(5) In *Owens, supra*, this Court expressed the view that The Exclusionary Rule was the only method available by which a citizen could be assured the protection of the Constitution.

(6) We now know that the *Owens* view is no longer valid. In *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the Court held that municipalities sued for damages under 42 U.S.C. § 1983 for constitutional violations are not entitled to qualified immunity based on good faith of their officials.

(7) In *Shapiro v. Columbia Union National Bank & Trust Co.*, 576 S.W.2d 310 (Mo. banc 1978), this Court held that § 1983 claims are cognizable in the State courts of Missouri.

(8) In these circumstances, a remedy, other than application of The Exclusionary Rule, exists in Missouri by which a person injured can obtain redress for a constitutional violation.

(9) The purpose of the The Exclusionary Rule was to deter violations of rights to privacy—it does not appear in the United States Constitution.

Accordingly, I would overrule the holding in *Owens, supra*, wash our hands of The Exclusionary Rule, and turn to 42 U.S.C. § 1983 for deterrence of violations of rights to privacy. *See* Seng. Municipal Liability for Police Misconduct, 51 Miss.L.J. 1 (1980); *Baskin v. Parker*, 588 F.2d 965 (5th Cir. 1979); *Sexton v. Gibbs*, 327 F.Supp. 134 (N.D.Tex.1970), *aff'd*, 446 F.2d 904 (5th Cir. 1971), *cert. denied*, 404 U.S. 1062, 92 S.Ct. 733, 30 L.Ed.2d 751 (1972).

I concur in the result.

BARDGETT, Judge, dissenting.

I respectfully dissent. In my opinion the failure of the trial court to sustain the appellant's motion to sever count I (committed November 13, 1978) from counts II and III (committed March 8, 1979) and count IV (committed March 12, 1979), and count IV from counts II and III constituted reversible error.

Rule 23.05, formerly Rule 24.04, permits the joinder of several counts charging separate crimes and the prosecution of them at

one trial providing the criteria of the rule are met. Of course, if there is no pretrial objection to joinder, a defendant cannot complain after conviction. *State v. Serna*, 526 S.W.2d 66, 67 (Mo.App.1975). This was the law even prior to the adoption of this rule. *See State v. Neal*, 514 S.W.2d 544, 550 (Mo.banc 1974) (Donnelly, C. J., concurring); *State v. Terry*, 325 S.W.2d 1, 5 (Mo. 1959).

Former Rule 24.04 was amended in 1971 in an effort to reconcile the Missouri rule, as set forth in *State v. Terry, supra*, and the "double jeopardy-collateral estoppel" holding of *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). *State v. Neal, supra*, at 550 (Donnelly, C. J., concurring).

In the instant case there are obviously no collateral estoppel or double jeopardy problems which would attend the trial or conviction on count I (November 13, 1978) assault with intent to kill with malice aforethought charge and count IV (March 12, 1979) carrying a concealed weapon charge vis-a-vis counts II and III (March 8, 1979) first-degree arson and first-degree assault charges. In *Ashe v. Swenson, supra*, the United States Supreme Court held that collateral estoppel prevented Ashe's trial for several other robbery charges after being acquitted of one robbery charge because, the Court said, the acquittal was based on a finding that the defendant was not present at the time of that robbery. Therefore, Ashe could not have been present when the other robberies took place because they occurred at the same time.

Here, an acquittal on alibi grounds of the November 13, 1978, charge (count I) would not estop a trial on the March 8, 1979, charges (counts II and III) or the March 12, 1979, charge (count IV). Consequently, I do not believe the circumstances of the instant case present the same or similar problem which this Court sought to mitigate by adopting the amendment to Rule 24.04 in 1971. I do not think this Court intended the rule to authorize, over objection, the trial of separate crimes where the times of their commission were so far apart, as in this case.

The majority contends "the essential test in determining whether a common scheme or plan exists . . . [to be] the requirement that all the offenses charged must be 'products of a single or continuing motive.' " Thus, several sales of controlled substances to the same person could be joined on the premise that there was a continuing motive to sell drugs. Yet, in *State v. Prier*, 561 S.W.2d 437 (Mo.App.1978), the court, correctly I think, held that three sales of different controlled substances within two months to the same undercover policeman could not be joined. There was no intent to make all the drug sales to the same person *prior* to the first sale and *no showing* that any overall design would have been frustrated if any of the offenses had not been committed. *Id.* at 440. Similarly, the stealing of purses from two people could be joined under the principal opinion's test, demonstrating a continuing purpose to steal purses. Nevertheless, the court in *State v. Howard*, 601 S.W.2d 308 (Mo.App.1980), found that joinder was improper where the defendant, within one hour, stole purses from two people who were located several blocks apart. No factual connection existed between the offenses. *Id.* at 309. Equally, assault of one person could be joined with the assault of another a short time later because they evidenced a single motive to injure people. Still, in *State v. Buford*, 582 S.W.2d 298 (Mo.App.1979), the court found that these crimes "were not shown to be motivated by a common scheme or plan, and could not be described as part of the same transaction." *Id.* at 302. Likewise, fraudulently obtaining loans from several banks in the same city within two years might be joined on the basis that the accused had a continuing motive to get loans in that fashion. Although the court in *United States v. Cartwright*, 632 F.2d 1290 (5th Cir. 1980), allowed joinder, it was permitted under Fed.R.Crim.P. 8(a) as crimes substantially similar in character and *not* as part of a common scheme or plan. All these crimes are conceivably products of a continuing motive, as are all crimes committed by one person where the purpose is

to obtain money. Money is the motive. Nonetheless, courts which have considered the meaning of a common scheme or plan for purposes of joinder generally agree that for separate crimes to be joined properly, they must have occurred within a relatively short period of time, with each not only evincing a single plan or design, but also with each being a natural product or progression of the other.[1] *See, e. g., State v. Howard, supra,* at 309; *State v. Pittman,* 569 S.W.2d 277, 280 (Mo.App.1978); *State v. Brooks,* 513 S.W.2d 168, 171 (Mo.App.1973). Simply, a common scheme or plan encompasses more than merely products of a continuing motive, purpose, or the desires of an evil mind. I believe that there also must be a close connection in time and place or nature of the offenses, with each being a natural product pursuant to that common plan.[2] *See, e. g., United States v. Jordan,* 602 F.2d 171, 172 (8th Cir.) *cert. denied,* 444 U.S. 878, 100 S.Ct. 165, 62 L.Ed.2d 107 (1979); *State v. Howard, supra,* at 309. The nebulous test of the majority allows joinder of offenses which have little in common and provides scant guidance to the trial court, prior to trial, in determining whether separate and distinct crimes constitute part of a common scheme or plan. Here, the principal opinion uses the evidence in the case to justify the joinder, but that evidence was not available to the trial court when it ruled on the motion to sever.

I am concerned how a trial court can apply Rule 23.05 in any particular case, as enlarged by the principal opinion, without jeopardizing a defendant's right to a fair trial as well as the validity of the conviction or convictions. The purpose of objecting to joinder is to *prevent* the trial of all counts at the same time. Therefore, the decision concerning joinder has to be made *before* trial because that is when the objection, to be preserved, must be made. There is no

evidence, at that time, on which to decide the issue. *State v. Jackson,* 566 S.W.2d 227 (Mo.App.1978), demonstrates the perils of such an approach. In that case, the prosecutor promised the judge that evidence would be introduced showing that first-degree murder and heroin possession were part of the same transaction. The evidence was never submitted and the court of appeals reversed and remanded for a new trial on each count. This is inefficient and creates unnecessary work which will recur frequently when judges order joinder without a solid evidentiary basis for doing so. The "products of a continuing motive or purpose" standard gives great leeway to prosecutors without aiding the trial court. The judge must guess at the beginning whether the crimes are part of a common scheme or plan and hope that after the evidence is submitted he is proved right. Convictions should not be premised on such a tenuous basis. The principal opinion states that "[t]he underlying theme of the Rule is the achievement of judicial economy through the joinder of related offenses." It seems to me, however, more judicially efficient to provide a workable formula in which crimes are likely to be joined properly than to adopt the majority test. Under that standard, the trial court speculates and hopes that the crimes are part of a common scheme or plan, only to be reversed on appeal and then have to retry the charges separately. In the instant case, the indictment did not even allege the four counts to be part of any common scheme or plan, and the record does not reflect the trial court's basis for denying the motion to sever prior to trial. The reason given by the prosecutor for joining count I (November 13, 1978, assault) with the others was that it was learned that the rifle which was the subject of count IV (March 12, 1979, carrying a

---

1. For a contrary view, see *State v. Mack,* 576 S.W.2d 550, 552 (Mo.App.1978).

2. I do not intimate that the test is the same as that for the same transaction, which requires that the crimes be closely intertwined in time and purpose. *See State v. Ross,* 611 S.W.2d 296, 297–98 (Mo.App.1980); *State v. Callies,*

588 S.W.2d 18, 20 (Mo.App.1979); *State v. Johnson,* 505 S.W.2d 11, 12 (Mo.App.1974). Otherwise, inclusion of the language of both the same transaction and common scheme or plan in Rule 23.05 would be superfluous. Nevertheless, the two tests for joinder of offenses are related.

concealed weapon) was the gun that fired the bullet on November 13, 1978.

The ownership and possession of the weapon by appellant on March 12, 1979, which the state's ballistics evidence shows fired the shot on November 13, 1978, would probably be admissible as evidence that appellant fired the shot on November 13, 1978.[3] The fact that carrying a concealed weapon is a crime, however, is of no consequence with respect to the November 13th assault charge. The question is whether the gun was in the possession, lawful or unlawful, of appellant on March 12. Since the ballistics tests show this gun fired the shot on November 13, mere possession of the gun is circumstantial evidence that appellant was the one who fired the shot on November 13. It is certainly no indication that the assault on November 13, 1978, was part of some scheme or plan which involved possession of a concealed weapon on March 12, 1979, or vice versa. Further, the weapon found on appellant March 12, 1979, and which fired the shot on November 13, 1978, played no part in the house bombing and assault of March 8, 1979.

I recognize that the evidence at trial was sufficient to permit a finding that appellant committed all these acts and that he was motivated in these acts by his desire to see his children and to cause Rufus to leave Lydia. Nonetheless, that motive alone does not, in my opinion, satisfy the common scheme or plan requirement of the rule nor does it otherwise come within the purview of former Rule 24.04(b). The crimes were not part of a common scheme or plan as I understand our rule. Not only were the acts decided on sequentially, and not all contemplated prior to the commission of the first one, but neither would some villainous and overall design have been frustrated if one or more of the crimes had not been committed or if appellant had committed

different crimes. Thus, the crimes in nature were not similar; they did not occur close in time as contemplated by the rule;[4] nor were they all formulated prior to the first crime and pursuant to an overall design.

Under *State v. Howard, supra, State v. Buford, supra,* and *State v. Prier, supra,* some of the convictions in the instant case would have to be reversed and remanded for improper joinder. I believe these cases are correct and therefore I dissent.

---

3. The principal opinion in footnote 7 determined that the evidentiary rule of common scheme or plan involved a different inquiry than that for joinder of offenses.

4. Although counts II and III occurred within four days of count IV, they were connected in

no other manner. There was no indication that appellant, acting pursuant to an overall design, was in the process of committing or in fact had committed another crime against the victims at the time he was arrested for carrying a concealed weapon.