**STATE of Missouri, Plaintiff-Respondent,**

v.

**Melvin THOMAS, Defendant-Appellant.**

No. 50024.

Missouri Court of Appeals, Eastern District, Division Three.

June 3, 1986.

---

**2.** It should be noted that the verdict of the jury effectively acquitted defendant of robbery, sec-ond degree.

John Munson Morris, Paul LaRose, Asst. Attys. Gen., Jefferson City, for defendant-appellant.

Mary E. Dockery, Robert J. Maurer, Asst. Public Defenders, Clayton, for plaintiff-respondent.

KAROHL, Presiding Judge.

Defendant Melvin Thomas appeals convictions by jury and sentences on charges of manslaughter, § 565.005 RSMo 1978, assault in the first degree, § 565.050 RSMo 1978, forcible rape, § 564.011 RSMo 1978, and two counts of robbery in the first degree, § 569.020 RSMo 1978. The jury found defendant not guilty of other charges of rape, sodomy, and two counts of robbery first degree. Defendant was sentenced in accord with the verdicts to consecutive sentences of ten, fifteen, twenty and ten years imprisonment on the above convictions. We affirm.

The state presented the following uncontradicted evidence. During the early evening on April 6, 1983, Eric Douglas went to visit Clarence Johnson. Clarence lived with his mother, Katherine, and sister, Connie. When Eric arrived, Connie saw him go into Clarence's bedroom. Connie then answered a knock on their door. She recognized and admitted Stanley Boyd. Stanley entered, followed immediately by defendant Melvin Thomas and a third man later identified as Major Boyd. Connie did not know these two men.

Major put his arm around Katherine's neck, held a carpet cutter to her throat and

ordered Connie and Katherine into Katherine's bedroom. Katherine was instructed to tie Connie with a telephone cord but she failed to do it properly so Major completed the task and placed a pillow over Connie's face. Major asked for and took various articles of jewelry and money. Major left Connie, still tied up on the bed, and took Katherine into the living room where he raped her and forced her to engage in oral sex. Defendant Melvin Thomas witnessed these acts in part as he stuck his head into the living room and expressed his intent to rape Connie. Defendant entered the bedroom where Connie lay on the bed. She was unable to see him because her face was covered by the pillow. Defendant untied Connie's legs, removed her clothing, exposed himself and began moving on top of her as if to have sex but did not enter her. Katherine then entered the bedroom and saw defendant on top of Connie.

Stanley Boyd had gone upstairs upon entering the Johnson home. Defendant had accompanied Stanley although both men later went downstairs before returning back upstairs a few times. Stanley carried a knife. Defendant ordered Eric to lay on the floor and then tied Eric's hands and feet. Eric lay on his stomach with his head covered by a pillow, although he could see his assailants' shoes moving on the floor. Clarence was also ordered to the floor and bound. Defendant Melvin took money from Eric's pocket while Stanley asked Clarence for money and jewelry. Eric heard Clarence make a muffled sound as though he had been hit. Defendant Melvin cut Eric's right hand after ordering Eric not to move. Eric testified that he heard Stanley kick and stab Clarence, then felt defendant Melvin stab him six times. Defendant and Stanley then left the room and Eric jumped out of a glass window to run for help. Clarence's money, necklace and rings were stolen. The three men left the Johnson home.

Katherine untied Connie and went upstairs to find Clarence moaning on the floor. She saw his stab wounds. Katherine and Connie ran from the house to call the police and an ambulance. Clarence was dead on arrival at the hospital.

Medical testimony established that Clarence had died of a stab wound consistent with that inflicted by a knife found at the Johnson home. Eric Douglas suffered six stab wounds and remained for treatment at the hospital for six days. Sexual assault kits revealed sperm in Katherine's smear and on her blouse which matched that of Major Boyd. No sperm or seminal fluid was found on Connie's smears.

All three victims were able to identify some of their assailants. Connie could identify Stanley and Major Boyd. Katherine identified Major and defendant Melvin Thomas. Eric identified Stanley and defendant. The procedures and accuracy of these identifications are not at issue here.

Defendant was charged with and tried for nine felonies. The jury instructions included those on capital murder, murder in the second degree and manslaughter. Defendant was found guilty of manslaughter, among the other felonies listed above.

Defendant claims trial court error in two respects. First, defendant contends it was plain error and violative of due process and equal protection guarantees of the federal and Missouri constitutions to allow the capital murder count to be tried along with the eight other felony counts because the crimes were emotionally charged and the evidence too complex for the jury to apply it intelligently to the law. Second, defendant asserts trial court error in permitting, over objection, prosecutors to display Clarence Johnson's morgue picture to his mother, Katherine. Defendant contends this display inflamed the jury because the witness began crying and was unnecessary because neither the cause of death or victim identification was at issue. This is said to have denied defendant due process and an impartial jury in violation of the federal and Missouri constitutions. We address defendant's arguments in order.

Defendant concedes in his brief that his first point was not properly preserved below for our review and asks we find plain error. To be entitled to review under the plain error standard defendant

must make a strong, clear showing that the alleged error affected substantial trial rights and amounted to manifest injustice. *State v. Arnold,* 676 S.W.2d 61, 63 (Mo. App.1984); Rule 30.20. Defendant has not met his burden of showing strongly and clearly that manifest injustice has resulted from the trial court's failure to sever, sua sponte, the capital murder count from the remaining counts.

■ Even if defendant had properly preserved for review his point by motion during trial, he would not prevail. Severance of properly joined counts is well within the sound discretion of the trial court to insure a fair determination of the defendant's guilt or innocence of each offense. *State v. Duren,* 556 S.W.2d 11, 20 (Mo. banc 1977); *revs'd on other grounds, sub nom. Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

■ The Missouri Supreme Court has noted that "there is no Missouri Supreme Court Rule requiring the trial court to sever counts that are properly joined under former Rule 24.04(b) [1] because of the prejudice created by joinder of offenses." *State v. McCrary,* 621 S.W.2d 266, 272 (Mo. banc 1981). The trial court is under a continuing duty during trial to counter prejudice and order severance, but only if necessary in the exercise of its discretion to guard against fundamental unfairness. *McCrary,* 621 S.W.2d at 272. In exercising its discretion, the trial court should consider all relevant factors including the number of offenses charged, the complexity of the evidence to be offered and whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. *State v. Allbritton,* 660 S.W.2d 322, 327 (Mo.App.1983).

■ As applied here, we conclude that the trial court did not abuse its discretion in failing to sever the counts. The jury could properly understand the law and evidence applicable to each count and, although they received thirty pages of instructions, they were able to convict defendant in five of nine counts with only one written question to the court. Further, defendant was not found guilty of capital murder. Such a record does not, as defendant contends, reveal denial of a fair trial. Such assertions are mere speculation by defendant, *McCrary,* 621 S.W.2d at 272, particularly in view of the not guilty verdicts which demonstrate a capable and discriminating jury.

■ Defendant's second point contends trial court erred in permitting, over objection, the prosecutor to display Clarence Johnson's morgue picture to his mother, Katherine, while she was testifying. Defendant argues that this display caused Katherine visible distress thereby inflaming the jury and was unnecessary because Clarence's cause of death or identification was not an issue.

■ On review of the record, we note that defendant did not object to the display until after the photo had been shown to the witness and she had affirmatively responded to questions that she could identify the photo as that of her son. This objection came too late and preserved nothing for our review. *State v. Crawford,* 619 S.W.2d 735, 750 (Mo.1981). We find no error, plain or otherwise. Rule 30.20.

We affirm.

SIMON and GARY M. GAERTNER, JJ., concur.

---

1. We note that this observation is equally applicable to the present Rule 23.05(b). Cf. *McCrary,* 621 S.W.2d at 270 n. 3.