**STATE of Missouri, Respondent,**

v.

**Willie SIMMONS, Appellant.**

**No. 71739.**

Supreme Court of Missouri,
En Banc.

Sept. 10, 1991.
Rehearing Denied Oct. 16, 1991.

Janet Thompson, Columbia, for appellant.

William L. Webster, Atty. Gen., Elizabeth Ziegler, John M. Morris, Asst. Attys. Gen., Jefferson City, for respondent.

ROBERTSON, Chief Justice.

A jury convicted appellant, Willie Simmons, of two counts of capital murder following the deaths of Leonora McClendon and Cheri Johnson and recommended that Simmons be put to death on both counts. The trial court sentenced Simmons to death in accordance with the jury's recommendation. Our jurisdiction is founded on Article V, section 3, Missouri Constitution, which places exclusive appellate jurisdiction in this Court "in all cases where the punishment imposed is death."

Simmons scatters twenty-six points of error through his brief to this Court. We consider only his first, which charges that the trial court erred in overruling Simmons' Motion to Sever the trial of the two murder counts, in violation of Section 565.004.1, RSMo 1986. That statute permits the State to charge and the trial court to try more than one homicide count in a single trial only when the homicides "constitute part of a common scheme or plan." We agree with Simmons' contention that these two murder counts should not have been tried in a single trial. The judgment of the trial court is reversed and the cause is remanded.

## I.

Simmons' convictions rest on circumstantial evidence. We will recite only so much of the evidence as is necessary to understand the arguments of Simmons and the State on the dispositive point.

Simmons single indictment contained two counts. Count I charged that Simmons, "after deliberation, knowingly killed Cheri Johnson by strangling her." Count II charged that Simmons, "after deliberation, knowingly caused the death of Leonora McClendon by strangling her."

### A.

The evidence showed that on November 30, 1987, Ms. Johnson's neighbor reported the sounds of a violent struggle coming from the Johnson apartment. An apartment complex security guard responded, knocked on Johnson's door and inquired as to the well-being of the apartment's occupant. A male voice responded, "Everything's all right. She's asleep." The security guard testified that he continued to knock and inquire for another ten minutes, but received no further response. The guard sought counsel from his dispatcher, who advised that if he, the guard, heard nothing further, he should continue his rounds. The guard took his leave.

The following morning, Johnson's sister contacted the apartment complex security personnel and sought entry into Johnson's apartment. She was accompanied to the apartment by the same security guard who had investigated the previous evening's reported disturbances. Finding both the stereo and television on and no one home, and recalling the events of the past evening, the security guard contacted the apartment manager and suggested that she summon the police. When the police arrived, they found Johnson under a bed, lying on her stomach, a brown necktie pulled tightly around her neck. The medical examiner subsequently determined that Johnson died of a ligature strangulation and suffocation caused by the necktie knotted tightly around her throat.

### B.

On October 27, 1987, a maintenance man responding to neighbors' complaints of foul odors found the body of a black female in an advanced state of decomposition in Leonora McClendon's apartment at the Lindell Towers. The body's feet were tied at the ankles; its hands were tied behind the back. A white cloth had been placed into the mouth and forced down the throat until it reached the vocal cords. This white cloth was held in place by a black t-shirt tied tightly over the mouth. Another piece of black cloth was tied around the neck. Dental records ultimately assisted the medical examiner in identifying the victim as Leonora McClendon. The medical examiner testified that McClendon died of mechanical asphyxiation caused by the blockage of her

airway resulting from the placement of the white cloth in her mouth.

### C.

Physical evidence found at the scene, which we need not detail here, and the statements of witnesses caused police to suspect Simmons' involvement in the Johnson murder. Upon learning of the police suspicions, Simmons' mother brought him into the police station for an interview. He received and waived *Miranda* warnings. The evidence and inconsistencies in Simmons' statement led detectives to arrest Simmons and charge him with Johnson's murder. As officers inventoried Simmons' personal property following his arrest, they discovered three pawn tickets. The investigation revealed that the property pawned had belonged to both Johnson and McClendon. Upon further investigation, physical evidence and witness' testimony provided a sufficient basis for police to charge Simmons with McClendon's murder.

Both McClendon and Johnson had dated Simmons.

### II.

Section 565.004.1 provides in pertinent part: "A count charging any offense of homicide may only be charged and tried together with one or more counts of any other homicide ... when all such offenses ... constitute part of a common scheme or plan." Simmons argues that the murders of Johnson and McClendon were not part of a common scheme or plan and that the trial court erred in overruling his Motion to Sever. The State claims that Simmons had a common scheme or plan: to murder his former girlfriends and steal their property. The existence of a common scheme or plan, the State argues, negates any error in the trial court's decision to try the two counts together.

This Court has not previously considered the meaning of the phrase "common

scheme or plan" within the context of Section 565.004.1.[1] The procedural rule the statute announces proceeds from concerns for judicial economy; liberal joinder of offenses is favored to achieve that end. *State v. McCrary*, 621 S.W.2d 266, 271 (Mo. banc 1981). Judicial economy is not the highest good under the statute, however; Section 565.004.1 requires that only those offenses that constitute part of a common scheme or plan may be lawfully joined.

The question whether a series of crimes proceeds from a common scheme or plan has both an evidentiary and a procedural component. The evidentiary consideration focuses on the common law rule excluding the admission of evidence of unrelated crimes to prove a defendant's guilt of the specific crime for which he stands trial. *McCrary*, 621 S.W.2d at 271 n. 7. The procedural consideration "deals with the more basic question of what crimes can be charged in a proceeding" and tried together. *Id.* Both the evidentiary and procedural considerations proceed from a presumption that evidence of other, unrelated crimes improperly offered at a trial or the trial of two, unrelated crimes in the same proceeding have a prejudicial impact on the fundamental fairness of that proceeding. Yet, this Court correctly cautioned that "the two rules deal with different questions, making the wholesale importation of the evidentiary rule into the law dealing with joinder of offenses inappropriate." *Id.*

■ The phrase "all such offenses ... constitute a common scheme or plan" as it applies to the procedural question at issue in this case is difficult to define with clarity. The plain language requires: First, that there be a plan or scheme, that is, a design or course of action determined in advance of the commission of the first offense for the purpose of achieving a preconceived result; and second, that each offense be consistent with and in furtherance

---

1. *State v. McCrary*, 621 S.W.2d 266 (Mo. banc 1981), considers the phrase within former Rule 24.04(b). That Rule stated:

With the exception stated in (a) hereof [subsection (a) dealt with joinder of more than

one offense of capital murder] all offenses which are based on the same act or acts which a part of ... a common scheme or plan may be charged in the same indictment."

of the plan. Thus this Court said in *McCrary,* "The essential test in determining whether a common scheme or plan exists ... is the requirement that all of the offenses charged must be *'products* of a single or continuing motive.' *State v. Jackson,* 566 S.W.2d 227, 228 (Mo.App. 1978); *State v. Prier,* 561 S.W.2d 437, 440 (Mo.App.1978)." (Emphasis in original). *McCrary,* 621 S.W.2d at 271.

■ The requirements of Section 565.004.1 for lawful joinder of offenses for charging and trial are not met simply because two crimes have factual components in common. There must be some proof that prior to the commission of the offenses, the defendant intended to commit all of them. *Prier,* 561 S.W.2d at 440.

■ Here, the trial court faced the admittedly difficult task of determining the presence of a common scheme or plan in advance of a full presentation of the evidence. On its face, the indictment shows only that both victims were strangled. At the hearing on Simmons' Motion to Sever, the State informed the trial court:

MR. MOSS [For the State]: Incident one occurs after the first one on or about the 30th, the late evening hours of the 30th of November, 1987, she is found the next morning in her apartment ... beaten and strangled to death and bound with a tie, a neck tie. The preceding incident is between the 18th day of October and the 27th day of October. The reason for that being is the last time she was seen alive was the 17th, and when she was discovered was the 27th. She likewise is beaten and bound and gagged, etc.

THE COURT: *That's your common item.*

MR. MOSS: Well, there's more. Let me—he dated both ladies, he stayed with both these ladies, both of these ladies are strangled. He stole jewelry from both these ladies, he pawned them at the same pawn shop on different occasions and went with a different lady.

\* \* \* \* \* \*

THE COURT: ... Did he pawn it at the same shop from both ladies?

MR. MOSS: Yeah, jewelry from both. And in possession our same witness that takes him to the pawn shop is the same lady that sees him with other items other than jewelry that are taken.

THE COURT: That's the one witness assuming it's severed she would be testifying to both cases about both incidents.

MR. MOSS: It would be hard to separate them out, you know, but she testified as to both. But here's the bottom line on these things. It's a circumstantial evidence case and *it goes to the identity of the perpetrator.*

(Emphasis added). Based on this colloquy, the trial court overruled Simmons' Motion to Sever.

It is apparent from this exchange that the trial court based its decision on one (or both) of two bases. The first is the presence of "a common item," that is, similarities between the manner in which both crimes were committed. The second is the State's "bottom line"—that the method used in the murders "goes to the identity of the perpetrator."

Neither basis is adequate to support joinder for charging or trial under Section 565.004.1. As to the first, the mere presence of facts common to both murders does not of itself indicate that Simmons set out to kill both victims prior to killing the first. Section 565.004.1 requires some showing that such a plan or scheme existed before the counts can be lawfully joined under the statute.

As to the second, the State's argument to the trial judge ignores the warning sounded in *McCrary;* it confuses the procedural question before the court with the rule permitting the admission of evidence of other crimes. That evidentiary rule permits the introduction of evidence of other crimes " 'when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that the proof of one tends to establish the other; (5) the identity of the person charged with

the commission of the crime on trial.' " *State v. Reed,* 447 S.W.2d 533, 534 (Mo. 1969), *quoting State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1955). The State's position before the trial court is founded on the proposition that the trial of the two counts should not be severed because factual commonality between the crimes goes to "the identity of the perpetrator." This identity argument has nothing to do with the presence or absence of a common scheme or plan for purposes of joinder under Section 565.004.1.

In sum, there is nothing on the face of the indictment or in the evidence to support a reasonable inference that these murders constitute part of a common scheme or plan. Section 565.004.1 expressly permits joinder, both for charging purposes and for trial, "only" where the crimes charged constitute part of a common scheme or plan. Section 565.004.1 authorizes neither the joinder of these two offenses in one indictment nor their joint trial. The trial court erred in overruling Simmons' Motion to Sever.

Where joinder is improper as a matter of law, prejudice is presumed and severance is mandated. *State v. Shubert,* 747 S.W.2d 165, 168 (Mo.App.1988).

### III.

The judgment of the trial court is reversed and the cause remanded for separate trials on Counts I and II of the indictment.

RENDLEN, COVINGTON, HOLSTEIN and BLACKMAR, JJ., MAUS, Special Judge, and HIGGINS, Senior Judge, concur.

BENTON, J., not participating because not a member of the Court when case was submitted.