STATE of Missouri, Respondent,

v.

Ronald JOLLIFF, Jr., Appellant.

Ronald JOLLIFF, Jr., Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 60577.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 14, 1993.

John A. Klosterman, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Michael J. Spillane, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

A jury convicted defendant of first degree murder, § 565.020.1 RSMo 1986, first degree assault, § 565.050 RSMo 1986, and two counts of armed criminal action, § 571.015 RSMo 1986. The trial court sentenced him to life without probation or parole on the murder count, plus consecutive sentences of 30 years on the assault count and 10 years on each armed criminal action count. Defendant raises six points of trial court error and

one point relating to denial of post conviction relief in this consolidated appeal. We affirm.

Defendant contends the trial court erred in (1) denying his motion to sever the charged offenses because joinder was improper under Rule 23.05 and § 565.004 RSMo 1986; (2) overruling his motion for a mistrial when an officer testified defendant's companion at the time of defendant's arrest was charged with unlawful possession of a weapon; (3) allowing the state to argue defendant's failure to call his counsel as a witness, who was present during a lineup, because this allowed an inference that no deficiencies existed in the manner in which the lineup was conducted; (4) permitting the state in voir dire to impermissibly attempt to commit the jury to a future course of conduct; (5) denying defendant's motion to quash the jury panel on the basis that the prosecutor exercised the state's peremptory strikes in a racially discriminatory manner; (6) overruling defendant's motion to dismiss or stay the proceedings as there has been a substantial failure to comply with the declared policy of §§ 494.400 to 494.505 RSMo Cum.Supp.1989 in the selection of grand juries and petit jury panels in the City of St. Louis; and, (7) denying Rule 29.15 relief without an evidentiary hearing because defense counsel's failure to obtain and introduce "911" emergency tapes rendered counsel ineffective because the tapes contained a description of the shooter that did not correspond to defendant.

Defendant does not challenge the sufficiency of the evidence. Briefly, the state's evidence established that defendant was one of two men who shot and seriously injured James McGee in the early morning hours of January 1, 1990. McGee and a friend named Eric Evans left a New Year's Eve party, apparently aware defendant and Anthony Paden were after him. McGee stood in front of Evans' sister's front door when he was shot by Paden and then by defendant. Evans was standing nearby. McGee was seriously injured. The state prosecuted defendant for the shooting. On July 22, 1990, the eve of defendant's trial for the January 1 shooting of McGee, defendant went to McGee's home where he shot and killed him. The victim's mother and his brother's girlfriend were present. One eye witness testified defendant committed the January shooting and two eye witnesses testified defendant committed the July shooting.

Defendant was charged in a single substitute information in lieu of indictment. With regard to the first degree assault count, the information stated, "on January 1, 1990, ... defendant Ronald Jolliff and Anthony Paden attempted to kill or cause serious physical injury to Jimmy McGee by shooting him and in the course thereof inflicted serious physical injury on Jimmy McGee," and with regard to the first degree murder count, it stated, "on July 22, 1990, ... defendant, after deliberation, knowingly caused the death of Jimmy McGee." The state waived the death penalty.

■ The first issue on appeal involves the denial of a severance of the charges of assault and murder, where the offenses occurred six months apart. They involved crimes against the same victim. The weapon used both times was a gun. Where joinder is improper, severance is mandated; *State v. Simmons,* 815 S.W.2d 426, 430 (Mo. banc 1991) otherwise, severance is within the sound discretion of the trial court. *State v. McCrary,* 621 S.W.2d 266, 271 (Mo. banc 1981). We turn first, therefore, to the rules governing joinder.

In general, Rule 23.05 permits liberal joinder of "[a]ll offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a *common scheme or plan.*" (our emphasis). When one of the offenses charged is homicide, § 565.004.1 RSMo 1986 further provides:

Each homicide offense which is lawfully joined in the same indictment or information together with any homicide offense or offense other than a homicide shall be charged together with such offense in separate counts. A count charging any offense of homicide may only be charged and tried together with one or more counts of any other homicide or offense other than homicide when all such offenses arise out of the same transaction or constitute part

of a *common scheme or plan.* (our emphasis).

The supreme court considered the meaning of the phrase "common scheme or plan" within the context of § 565.004.1 in *State v. Simmons,* 815 S.W.2d 426, 428 (Mo. banc 1991). Whether a series of crimes proceeds from a common scheme or plan has both an evidentiary and a procedural component. *Id.* "The evidentiary consideration focuses on the common law rule excluding the admission of evidence of unrelated crimes to prove a defendant's guilt of the specific crime for which he stands trial." *Id.* There is a presumption that evidence of other, unrelated crimes improperly offered at a trial will have a prejudicial impact on the fundamental fairness of that proceeding. The procedural consideration requires: "First, that there be a plan or scheme, that is, a design or course of action determined in advance of the commission of the first offense for the purpose of achieving a preconceived result; and second, that each offense be consistent with and in furtherance of the plan." *Id.* at 428–429. The *Simmons* court recognized that a test in determining whether a common scheme or plan exists is the requirement that all of the offenses charged must be products of a single or *continuing motive. Id.* at 429. (citations omitted; our emphasis). There must be some proof that prior to the commission of the offenses, the defendant intended to commit all of them. *Id.* at 429.

In *Simmons,* the defendant strangled two former girlfriends on separate occasions. He sold the jewelry he stole from them to the same pawn shop. The similarity in the manner in which both crimes were committed and the fact that the method used in the murders was probative on the identity of the perpetrator was held insufficient to establish a "common scheme or plan." *Id.* at 429. Two capital murder convictions were reversed because the trial court failed to sever the improperly joined charges.

We find the present case factually more analogous to *State v. McCrary,* 621 S.W.2d 266 (Mo. banc 1981) than *Simmons.* In *McCrary,* a "common scheme or plan" was held to exist where three separate criminal acts against the defendant's former girlfriend

and children occurred over the course of four months. The acts, which included a shooting, firebombing a house, and carrying a concealed rifle, were charged and tried together. Joinder was found proper because "the state's evidence showed that [defendant's] actions were the product of the single, continuing motive of revenge by harassment for the loss of his paramour and children." *Id.* at 271. In addition, failure to sever was held not to be an abuse of discretion in light of the relevant factors: the number of offenses charged, the complexity of the evidence to be offered; whether the jury will be able to distinguish the evidence and apply the law intelligently as to each offense; and, absence of prejudice or the ability to achieve a fair result. *Id.* at 272.

From both an evidentiary and procedural standpoint, the two shootings in the present case are related by an element of continuing intent or motive. There is an available inference that defendant shot McGee a second time only because he did not achieve the desired end the first time. Alternatively, if we accept the theory that defendant's motive for the second shooting was to prevent the victim from testifying against him concerning the first shooting, the second shooting occurred solely because of the first. In either event, the two shooting incidents fall within the "common scheme or plan" language sufficiently to constitute proper joinder. It is not necessary to find that prior to the commission of the January 1 shooting, he intended to shoot the same victim on two occasions. When someone begins a course of criminal conduct against a single victim or group of victims, the consequences of the criminal act may alter the course of subsequent criminal acts. If tried separately the evidence of both crimes would have been admissible in each trial. We hold that the counts of first degree assault and first degree murder based on two separate shooting incidents were properly joined in one indictment, and, for the reasons presented, that the trial court did not abuse its discretion in denying defendant's motion to sever the charges.

Defendant's second point is the trial court erred by overruling his motion for a mistrial when an officer testified that when

he arrested Paden, the other shooter on January 1, Paden was carrying a concealed weapon. Defendant contends such statements constituted evidence of other bad acts of Paden not relevant to whether defendant had committed the offense charged which prejudiced the jury against defendant implying he possessed a "bad character."

The officer testified that, at the time of defendant's arrest for the January 1 shooting, he was with Paden, also a shooter, who had a weapon on his person at the time and was charged with carrying a concealed weapon. The cases defendant cites support the proposition that evidence of *defendant's* other unrelated crimes are inadmissible. Paden's bad act of having a concealed gun is not evidence of an unrelated bad act of defendant. In addition, the jury had already heard testimony indicating Paden was the other shooter, so the admission of evidence Paden was later arrested with a gun linked to the gun he used to shoot McGee on January 1 was both probative and not significantly prejudicial. Moreover, the trial court sustained defendant's objection to the testimony concerning Paden's charge of carrying a concealed weapon and instructed the jury to disregard it. We find no error in the trial court's refusal to grant the drastic remedy of a mistrial based on this officer's testimony. *State v. Jackson*, 743 S.W.2d 493, 497 (Mo. App.1987).

■ Defendant's third point is the trial court erred in allowing the prosecutor to comment on defendant's failure to call the attorney who represented defendant at a lineup. Defendant reasons that because his counsel at the lineup would be equally available to both parties, commenting on defendant's failure to call him as a witness is improper. *State v. Valentine*, 587 S.W.2d 859, 862–65 (Mo. banc 1979). In closing argument, the state said, "an assistant public defender was there for that lineup. He watched the whole thing and if it hadn't happened exactly as they tell you here you can bet [counsel] would be here in court to tell you about it." Inasmuch as defendant has never contended any lineup deficiencies existed, there was no prejudice in allowing the prosecutor to argue no procedural irregularities took place. One eye witness who identified defendant at the lineup and at trial as the murderer knew him before the shooting. Irregularity of the lineup would be relevant only if reliable identification was a disputed issue. It was not a disputed issue. No prejudice resulted from the ruling. *State v. Shaw*, 569 S.W.2d 375, 380 (Mo.App.1978).

Defendant next avers the trial court erred by permitting the state to impermissibly attempt to commit the jury to a future course of conduct. The prosecutor asked whether the venirepersons anticipated or would require more than just one witness' testimony or a certain type of evidence to convict, or if they had a preconceived idea of what a murderer looks like. Defendant claims, in effect, the state asked the jury to return a verdict of guilty should the state's evidence develop as set forth by the prosecutor.

■ It is reversible error for an attorney during voir dire to attempt to obtain from the venire a commitment or pledge to act in a specific way if certain facts are elicited or certain contingencies arise at trial. *State v. Crew*, 803 S.W.2d 669 (Mo.App.1991). However, counsel may probe the venire to determine preconceived prejudices that would prevent the jurors from following the court's instructions. *Id.* We review a ruling on an objection during voir dire examination to determine whether the ruling was a manifest abuse of discretion resulting in a real probability of injury to defendant. *Id.* at 669–670. We find no abuse of discretion.

The state's questions were all in the form of whether the venire members thought certain procedures were fair, and if they had preconceived ideas that would prevent them from following the law. The state could have directly asked the venire whether they could find a defendant guilty if they believed the testimony of a single eye witness. A question in that form would not commit any juror to a course of conduct. *Id.* at 670. Point denied.

■ Defendant's fifth point is the trial court erred in denying his motion to quash the jury panel on the basis that the prosecutor exercised the state's peremptory strikes in a racially discriminatory manner. He con-

tends the trial court erred in finding the prosecutor did not discriminate in using three of six peremptory strikes against black venirepersons in that the state peremptorily struck two black venirepersons, but did not strike a similarly situated white venireperson, and the state's reasons were pretextual.

Defendant supports his point with a lengthy recitation of the Missouri case law following *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), a brief procedural account, and a conclusory statement that the state's reasons for using three of six peremptory strikes on black venirepersons were "clearly pretextual." The state volunteered race neutral reasons for *all* of its peremptory strikes, and asked defense counsel to do the same. The state is entitled to rely upon hunches and past experience so long as racial discrimination is not the motive. *State v. Frison*, 775 S.W.2d 314, 318 (Mo.App.1989). Defendant did not inform the trial court and has not identified in his brief any venirepersons who were similarly situated to those who were struck, but allowed to remain on the panel. Defendant did not carry his burden of establishing the state's challenges were racially motivated and that its reasons were pretextual. *State v. Frison*, 775 S.W.2d at 317 (1989). Point denied.

Defendant's final direct appeal point is the trial court erred by overruling defendant's motion to dismiss or, in the alternative, to stay the proceedings as there has been a substantial failure to comply with the declared policy of §§ 494.400 to 494.505 RSMo Cum.Supp.1989 in the selection of grand juries and petit jury panels in the City of St. Louis. He argues the grand jury and petit jury selection procedures denied defendant a jury reflecting a fair cross section of the citizens of the city.

This court has repeatedly denied this contention, and no jurisprudential purpose would be served by restating the body of precedent we are bound to follow. *See, e.g., State v. Wheeler*, 845 S.W.2d 678, 681 (Mo.App.E.D. 1993). Point denied.

Lastly, defendant contends the motion court clearly erred by denying his Rule 29.15 motion for post conviction relief without an evidentiary hearing in that trial counsel failed to perform as a reasonably effective attorney under the same or similar circumstances by not obtaining and introducing into evidence the "911" emergency tapes which contained a description of the shooter in the murder that did not correspond to defendant. We recall identification was an uncontested issue. Defendant was known to one of the eye witness.

Defendant's motion for post conviction relief states, "a person at the scene of the [July 22] shooting described the shooter as a dark black male of medium build about six feet to six feet, one inch tall, who weighed 175 to 185 pounds, had two gold teeth and wore a white tee shirt and blue jeans. However, movant weighed 155 pounds, stood five feet, nine inches and had only one gold tooth." Given that trial counsel's theory of defense consisted of a misidentification, movant reasons that the tape would contradict one of the witnesses to the murder. Movant does not, however, indicate how a description made by an unidentified caller overstating the assailant's weight by 20 pounds, height by three inches, and number of gold teeth by one, would impeach two eye witnesses, one of whom knew defendant and was not seeing him for the first time when the shooting took place. The findings and conclusions of the trial court that the admission of the "911" tape, if proper, would not have changed the result of the trial, is not clearly erroneous. Rule 29.-15(j). Point denied.

We affirm.

CRANE, P.J., and CRAHAN, J., concur.