

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED107197 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | of St. Charles County |
| vs. | ) | 1611-CR01673-01 |
| | ) | |
| KENOL CELIAN, | ) | Honorable Ted C. House |
| | ) | |
| Appellant, | ) | Filed: February 25, 2020 |

### OPINION

Kenol Celian appeals the judgment of the Circuit Court of St. Charles County entered after a jury found him guilty of the class B felony of unlawful use of a weapon. He contends the trial court abused its discretion by allowing the State during voir dire to present in explicit detail the facts of the case and to ask questions of prospective jurors in a manner that prejudiced him by predisposing the venire panel to react in a particular way favorable to the State to the anticipated evidence. We agree and therefore reverse and remand for a new trial.[1]

---

[1] Celian also argues that the court abused its discretion by admitting the testimony of a law enforcement officer relating one of the alleged victims' out-of-court statements, but due to the nature of that allegation of error and the likelihood that the issue may be avoided on remand, we have concluded it is necessary and appropriate for us to address only Celian's point regarding the State's voir dire questioning.

## Background

This case arose from an incident on the evening of September 20, 2015, when Nathaniel Myers and his sister, Jennifer Myers, were traveling in their minivan on Interstate 70 near O'Fallon, Missouri, and Celian allegedly drove up behind them in a large green SUV and with a firearm shot out the back right tire of the Myerses' vehicle. The State charged Celian with one count of the class B felony of unlawful use of a weapon, claiming that he "knowingly discharged a firearm at a motor vehicle," and the case proceeded to a jury trial.

During voir dire, the State was permitted over Celian's objections to engage in a line of questioning in which it presented facts of the case to the venire panel in explicit detail. The transcript of the State's inquiry reads as follows:

| | |
|---|---|
| THE STATE: | Anybody here in the military who feels that because of that service, you couldn't be fair? This is a case about guns. You couldn't be fair and impartial in this case to both the State and to Mr. Celian? Anybody? Yes, sir. |
| JUROR NO. 10: | Juror No. 10. I think—I don't think I could honestly say that there's a reason to pull out a firearm, aim it at somebody if you're not willing to kill them. So yes. |
| THE STATE: | Okay. Well, let me ask you this: If I told you that the circumstance—I talked about road rage before. That this is not a thing where the State believes and it's not trying to prove that this defendant was actually shooting at the people, but that he was basically trying to shoot the tire out of their—rear tire out of their car. The fact that he wasn't trying to shoot someone but was basically trying to disable their vehicle because he was angry about something, would that change your answer? |
| JUROR NO. 10: | No, sir. There's no excuse for that. |
| THE STATE: | Okay. So you don't think you could be fair and impartial? |
| JUROR NO. 10: | No, sir. I think it is fair saying that there's no excuse. |
| THE STATE: | Okay. All right, sir. Thank you. Anybody else? I mean, that's— and that's the question here. The State's not trying to prove that Mr. |

2

|  |  |
|---|---|
| | Celian here was trying to shoot anyone. But what our evidence will show and what I believe is the case is— |
| COUNSEL: | Judge, I'm going to object. |
| THE COURT: | State your objection. |
| COUNSEL: | Judge, I think we're getting too far into the facts of this case. |
| THE COURT: | Overruled. |
| THE STATE: | What the State's evidence will be is that Mr. Celian came up to the victim's car after exhibiting some behavior that indicated he was angry about this. And he—after going in front and cutting off the car came behind— |
| COUNSEL: | Judge, I'm going to object again. This is not opening statement. |
| THE STATE: | I'm not— |
| THE COURT: | Overruled. |
| THE STATE: | Came up behind the victim's car, alongside of it to the right side, and shot the rear—rear right tire, and disabled it. The tire went flat and the victims went to the side of the road. Is there anybody here that thinks that is just not a big deal? He wasn't trying to shoot anyone, he was just shooting the tires out of a car. Does anybody think that's—we're making a mountain out of a molehill here? That's not a big deal? Anybody feel that way? What's that, sir? |
| JUROR NO. 4: | No. 4. It is a big deal. What if he missed the tire and hit the gas tank? |
| THE STATE: | Okay. That's my point. But does everybody agree then that that's something that he should be accountable for, if he did it, correct? That is a big deal when you shoot into a vehicle, right? |
| JUROR NO. 4: | Yes. |
| THE STATE: | Would everybody agree with that general proposition? Anybody who disagrees with it? Thank you. |

The jury was empaneled, the case tried, and Celian was found guilty of the State's charge of unlawful use of a weapon and sentenced to a term of 15 years' imprisonment. His motion for

3

new trial, which asserted prejudice from the State's voir dire questioning, was denied. This appeal follows.

**Discussion**

1. *Celian adequately preserved his claim of error with respect to the State's voir dire questioning.*

The State argues that Celian failed to preserve his claim that the trial court abused its discretion by allowing the State during voir dire to present in explicit detail the facts of the case and to ask questions of prospective jurors in a manner that predisposed the venire panel to react in a particular way favorable to the State to the anticipated evidence. We disagree. To preserve a claim of error, counsel's objection must be sufficiently specific to apprise the trial court of the grounds for the objection. *State v. Amick*, 462 S.W.3d 413, 415 (Mo.banc 2015) (citing *State v. Stepter*, 794 S.W.2d 649, 655 (Mo.banc 1990)). And on appeal, the party asserting error must rely on the same theory that supported its objection at trial, or the issue is not preserved. *State v. Schneider*, 483 S.W.3d 495, 504 (Mo.App.E.D. 2016).

In this case, we conclude Celian's objections during voir dire and in his motion for new trial reasonably apprised the trial court of the same, sufficiently-specific issue he raises on appeal: that the State was permitted to divulge facts and ask questions based thereon in a manner that prejudiced him to the venire panel. Celian's objection during voir dire was that the State's questioning strayed "too far into the facts of [the] case" and effectively involved making an "opening statement" to *prospective* jurors—i.e., placing the State's theory of the case before them in light of anticipated evidence. *See White v. State*, 939 S.W.2d 887, 902 (Mo.banc 1997) (defining opening statement). The objection in Celian's motion for new trial was that the court committed reversible error by allowing the State "to give the venire panel specific facts about Defendant's case during voir dire" and to "repeatedly introduce the facts of the case into [its] questions for the

4

panel," leaving him "without any opportunity . . . to defend against [the State's version of events]." And Celian's point on appeal, articulating the same hazard, asserts that the trial court abused its discretion by allowing the State's voir dire questioning because "the venire panel was tainted by the [State] divulging non-critical facts of the case that did not have a substantial probability of exposing a disqualifying bias in order to [ask questions] . . . purely to predispose potential jurors to believe the State's arguments at trial." We find that the point was preserved.

2. *We review for abuse of discretion the trial court's rulings in supervising voir dire.*

The trial court supervises voir dire, and the nature and extent of the questions counsel may ask are discretionary with that court. *State v. Walker*, 448 S.W.3d 861, 867 (Mo.App.E.D. 2014) (citing *Clark*, 981 S.W.2d at 146). Specifically, and most relevant here, it falls to the trial court "to determine whether a disclosure of facts on voir dire is sufficient to assure the defendant of an impartial jury without, at the same time, being tantamount to a presentation of evidence" or argument that would tend to sow prejudice in the venire. *State v. Reyes*, 108 S.W.3d 161, 165-66 (Mo.App.W.D. 2003) (citing *State v. Antwine*, 743 S.W.2d 51, 58 (Mo.banc 1987)).

We review for abuse of discretion such rulings made by the trial court during voir dire. *Walker*, 448 S.W.3d at 867 (citing *Clark*, 981 S.W.2d at 146). And if we find abuse, we will reverse if the defendant shows a real probability exists that he suffered prejudice as a result. *Id.*

3. *The purpose of voir dire in a criminal trial is to vindicate the defendant's constitutional right to a fair and impartial jury.*

A defendant is entitled to a fair and impartial jury. *State v. Clark*, 981 S.W.2d 143, 146 (Mo.banc 1998) (citing U.S. CONST. amends. VI, XIV; MO. CONST. art. I, sec. 18(a)). One aspect of "the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors." *Id.* (citing *Morgan v. Illinois*, 504 U.S. 719, 729 (1992)). The purpose of voir dire is to discover bias or prejudice in order to select a fair and impartial jury. *Id.* (citing *State v.*

5

*Leisure*, 749 S.W.2d 366, 373 (Mo.banc 1988); *State v. Smith*, 649 S.W.2d 417, 428 (Mo.banc 1983)). "Without an adequate voir dire the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Id.* (citing *Morgan*, 504 U.S. at 729-730).

4. *Parties may not try the case during voir dire—when prospective jurors are exposed to facts of the case in a manner that predisposes them to react in a particular way to anticipated evidence, prejudice may result.*

In light of the purpose and timing of voir dire, neither the State nor defense counsel may try the case during that proceeding. *Clark*, 981 S.W.2d at 146 (citing *Antwine*, 743 S.W.2d at 58). Generally, argument or "a presentation of the facts in explicit detail" during voir dire is inappropriate. *Id.* (citing *Antwine*, 743 S.W.2d at 58). Similarly, the parties may not attempt to elicit a commitment from jurors how they would react to hypothetical facts. *Id.* (citing *State v. Jones*, 749 S.W.2d 356, 359 (Mo.banc 1988)); *State v. Jolliff*, 867 S.W.2d 256, 260 (Mo.App.E.D. 1993) ("It is reversible error for an attorney during voir dire to attempt to obtain from the venire a commitment or pledge to act in a specific way if certain facts are elicited or certain contingencies arise at trial."); *Antwine*, 743 S.W.2d at 59 ("The State may not hypothesize a set of facts and then ask the prospective jurors how they would vote under those facts.").

"[W]hen the inquiry includes questions phrased or framed in such manner that they require the one answering to speculate on his own reaction to such an extent that he tends to feel obligated to react in that manner, prejudice can be created." *Clark*, 981 S.W.2d at 146-47 (citing *State v. Garrett*, 627 S.W.2d 635, 642 (Mo.banc 1982)). Accordingly, Missouri courts have long held that "[p]hrasing a voir dire question in such a manner which pre-conditions the panel members' mind to react, even subconsciously, in a particular way to anticipate[d] evidence is an abuse of counsel's privilege to examine prospective jurors." *State v. Womack*, 967 S.W.2d 300, 302 (Mo.App.W.D.

6

1998) (citing *State v. Garrett*, 627 S.W.2d 635, 642 (Mo.banc 1982)); *State v. Taylor*, 742 S.W.2d 625, 627 (Mo.App.E.D. 1988).

While some inquiry into the critical facts of the case is essential to search for bias and prejudice in the jury, *Clark*, 981 S.W.2d at 147, "[t]he purpose of exposing prospective jurors to critical facts . . . is to discover bias, not to *create* bias . . . ." *State v. Whitt*, 461 S.W.3d 32, 39 (Mo.App.E.D. 2015) (emphasis added) (citing *State v. Ousley*, 419 S.W.3d 65, 74 (Mo.banc 2013)). To determine whether voir dire questioning is directed properly at discovering bias, or inappropriately at sowing prejudice in the venire, the court must ask whether for a prospective juror to provide an affirmative or negative answer to the questioning "could reasonably be construed as committing [them] to a particular course of action, i.e., to convict or acquit, or to give credibility and weight to the testimony of any particular witness." *State v. Manley*, 414 S.W.3d 561, 569 (Mo.App.E.D. 2013).

Questions beginning with "could" or "will you be able" generally do not commit a juror to a verdict. *State v. Isreal*, 537 S.W.2d 565, 567 (Mo.App. 1976). However, queries touching upon a prospective juror's expectations or feelings about what they "would" do or believe in light of particular facts about the case are irrelevant and properly excluded. *State v. Kreutzer*, 928 S.W.2d 854, 865 (Mo.banc 1996) (finding trial court did not plainly err in refusing to allow defense counsel to ask prospective juror, "If the defendant didn't testify, and he won't, and the State was close but not beyond a reasonable doubt, would that cause questions in your mind?"). Similarly, "[a]ny question requiring prospective jurors to 'agree' with some proposition stands in danger of violating the proscription against seeking commitments during voir dire examination." *State v. Norton*, 681 S.W.2d 497, 499 (Mo.App.E.D. 1984).

For example, in *Norton*, where the State anticipated there would be evidence during a rape trial that "the victim contacted defendant's mother and offered to drop the charges in return for $5,000.00," the State made an inappropriate "attempt to commit prospective jurors to a particular course of future conduct" when it asked them, "And is there anyone on the jury panel—does everyone on the jury panel agree, that a victim of a rape would prefer not to have to testify to the details of such a crime in a public trial?" *Id.* The State's question was a "subtle attempt to commit the jurors to overlook damaging evidence which the prosecutor knew would be forthcoming." *Id.*

5. *The trial court here abused its discretion by allowing the State to present in explicit detail the facts of the case and to ask questions of prospective jurors in a manner that predisposed them to react in a particular way favorable to the State to the anticipated evidence, prejudicing Celian.*

Here, the State made several different inquiries during the challenged line of voir dire questioning. As noted above, before it provided any explicit details of the case, the State first asked the members of the venire panel whether, in light of their military service, any of them could not be fair to either the State or Celian. This was certainly permissible. Second, the State asked venire members whether they could be fair and impartial in light of the fact that the State's burden in the case was not to prove that Celian shot at a person, but that he merely shot the tire out of the Myerses' vehicle. This was likewise permissible. There is nothing prejudicial about the State divulging limited facts in order to determine whether prospective jurors will be able to follow the court's instructions about what the State needed to show to prove its case. *See State v. Conaway*, 557 S.W.3d 372, 377-78 (Mo.App.W.D. 2018) (holding the State's voir dire questioning whether prospective jurors would be able to convict the kidnapping defendant without proof of motive did not inappropriately seek a commitment from jurors but rather sought permissibly to determine whether the venire could follow the trial court's instructions).

8

However, following these bias-*seeking* questions, the State was permitted to present the facts of the case in explicit detail and in doing so turn to asking bias-*injecting* questions. Specifically, the State was allowed to describe in depth what it believed its evidence would be and how that evidence inculpated Celian in the sequence of events for which he was charged with unlawful use of a weapon, and then also to ask the venire panel whether they *agreed*, or whether they *disagreed*, that if *those particular facts* were shown, Celian *should be held accountable* for the described conduct—that what he did *specifically* was a "big deal."

These questions, in particular, departed from the established purpose of voir dire—to discover bias or prejudice in order to select a fair and impartial jury—to instead sow prejudice in the venire. *See State v. Clark*, 981 S.W.2d 143, 146-47 (Mo.banc 1998) (identifying as source of prejudice questions that require the venire panel to speculate about how they will react to certain evidence). In soliciting the prospective jurors' feelings in light of such specifics, the State effectively sought a commitment to its desired verdict—it attempted to precondition the panel members' minds to react in a particular way to the anticipated evidence, which is an abuse of its privilege to examine prospective jurors. *State v. Womack*, 967 S.W.2d 300, 302 (Mo.App.W.D. 1998) (citing *State v. Garrett*, 627 S.W.2d 635, 642 (Mo.banc 1982)); *State v. Taylor*, 742 S.W.2d 625, 627 (Mo.App.E.D. 1988). Indeed, in light of the explicit factual details provided, for a prospective juror to provide an affirmative answer to the State's question could reasonably be construed as committing them to a particular course of action. And as our cases hold, that fact signals the State's question was directed not at exposing prejudice, but at injecting it into the case. *State v. Manley*, 414 S.W.3d 561, 569 (Mo.App.E.D. 2013).

"It is reversible error for an attorney during voir dire to attempt to obtain from the venire a commitment or pledge to act in a specific way if certain facts are elicited or certain contingencies

9

arise at trial." *State v. Jolliff*, 867 S.W.2d 256, 260 (Mo.App.E.D. 1993). Yet, the State briefed the venire members on the specific facts of the case and then essentially asked whether they would convict—whether they would hold Celian accountable for his alleged conduct, whether they agreed it was a "big deal"—if those facts were shown at trial. This line of voir dire questioning was not directed at determining, properly, whether the prospective jurors could follow the court's instructions, or whether, for some reason, they "could not" or "would not be able to" convict Celian no matter the particular facts. Rather, it sought to bind jurors to a certain view of anticipated facts.

Certainly, it was proper for the State before providing a narrative of particular facts to ask prospective jurors whether they "could not" or "would not be able to" find Celian guilty of the charged offense, unlawful use of a weapon, simply because they would require evidence that he meant to shoot at or kill someone. *Cf. State v. Crew*, 803 S.W.2d 669, 670 (Mo.App.E.D. 1991) (finding no error where the State "sought to determine whether any member of the venire panel *could* not or would not *be able* to find the defendant guilty of the charges if the only evidence of guilt of the acts charged consisted of the testimony of a single witness, the victim"). But the State went further here and the trial court erred by allowing it to divulge facts and ask questions during voir dire that were designed to obtain the venire members' assurances that if the State presented the case it described, they would, as jurors, hold Celian accountable for the charged offense.

We also conclude Celian has shown that a real probability exists that he suffered prejudice as a result. Prior to the empaneling of the jury, the State was allowed to put before every venire member the particular facts it believed supported a conviction, and to directly solicit their agreement to reach a certain verdict if those facts were shown. This was prejudicial error. "Soliciting responses on the specific facts or circumstances of a case is improper when it appears calculated to predispose jurors to react to anticipated evidence in a particular way or to commit to

10

a certain outcome." *Clark*, 981 S.W.2d at 146–47. There is too great a risk that the jury, recalling the State's voir dire questioning, felt obligated to give the reaction improperly solicited by the State—no member of the venire panel registered any disagreement with the State, when directly asked to reveal such, that if the particular facts disclosed during voir dire were shown, what Celian did was a "big deal" and he should be held accountable for the described conduct. Point granted.

## Conclusion

For the reasons stated above, we reverse the judgment of the trial court and remand for a new trial in this case.

_____
James M. Dowd, Presiding Judge

Gary M. Gaertner, Jr., J., and
Robin Ransom, J., concur.

11